Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2827 | **DATE** | 9/9/2002 |
| **CASE TITLE** | Technical Concepts, LP vs. Zurn Industries, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for reconsideration of Court's Order of April 26, 2002 [4-1] is granted. This case is hereby reinstated and transferred to the Western District of Pennsylvania.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 10 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 10 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| RO | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 1 0 2002

| | |
|---|---|
| TECHNICAL CONCEPTS, L.P., | ) |
| Plaintiff, | ) |
| v. | ) No. 02 C 2827 |
| ZURN INDUSTRIES, INC., | ) Judge Ruben Castillo |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Technical Concepts ("Technical") filed suit under the Declaratory Judgment Act, 28 U.S.C. § 2201, against Defendant Zurn Industries ("Zurn") seeking declaratory relief arising out of a patent infringement and licensing agreement dispute. This Court, exercising its discretion under § 2201, dismissed the complaint for failure to adequately allege jurisdiction and venue. Technical now moves for reconsideration of the dismissal. For the reasons set out herein, we grant Technical's motion and reinstate the case. (R. 4-1.)

## RELEVANT FACTS[1]

Technical, an Illinois limited partnership, manufactures and distributes automatic flush valve actuators under the brand name Auto Flush. (R. 1-1, Compl. ¶ 2.) Technical holds a patent for its automatic flush valve actuator under U.S. Patent No. 5,680,879. (*Id.* at ¶ 4.) Zurn holds a patent for its own actuator under U.S. Patent No. 5,431,181 (the '181 patent). (*Id.*) In 1996 Zurn threatened Technical with a patent infringement suit arising out of the '181 patent. (*Id.*) Technical filed suit in the Northern District of Illinois seeking a declaration that Technical's

---

[1] For purposes of this motion we accept as true the facts alleged in Technical's complaint. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). Any conflicts in affidavits will be resolved in Plaintiff's favor. *RAR, Inc. v. Turner Diesel*, 107 F.3d 1272, 1275 (7th Cir. 1997).

10

Auto Flush unit did not infringe Zurn's patent. (*Id.*) Zurn in turn filed a patent infringement action against Technical and one of its customers in the Western District of Pennsylvania. (*Id.*) In 1997 the parties dismissed these lawsuits and executed a License and Supply Agreement that gave each party a license under the other's flush valve actuator patents. (*Id.*) In March 1999 Technical and Zurn executed a new License and Supply Agreement ("the Agreement"), which was subsequently modified in October 2000. (*Id.* at ¶ 5.)

On March 12, 2002, Zurn sent Technical a letter alleging numerous breaches of the Agreement. (*Id.*, Ex. C., Zurn letter.) Technical maintained that it had not breached the Agreement. (R. 1-1, Compl. ¶ 6.) On March 20, 2002, the parties engaged in a telephone conference, during which Zurn stated that it believed Technical to be in breach and that there was a high likelihood that Zurn would seek to terminate the Agreement. (*Id.* at ¶ 7.) Technical alleges that Zurn also stated that there was a strong likelihood that a patent infringement suit would follow once the Agreement was terminated. (*Id.*) Zurn maintains that at no time during the March 20 telephone conversation did Zurn threaten or even mention a possible patent infringement suit. (R. 6-1, Def.'s Resp., Ex. F.) On April 12, 2002, Zurn gave formal notice of termination of the Agreement. The Agreement was terminated on May 13, 2002. (*Id.*, Ex. D.)

Technical filed its first complaint on March 25, 2002, which this Court dismissed without prejudice for failure to properly allege jurisdiction and venue. (R. 3-1, April 26, 2002 Order.) Technical filed another complaint on April 19, 2002, alleging that it was "fearful that upon the termination date of the License and Supply Agreement between the parties, Zurn will file a patent infringement action against [it]." (R.1-1, Compl. ¶ 10.) It further stated that "if claim 1 of the '181 patent is interpreted by this Court to cover Technical Concepts' Auto Flush unit, claim 1 of

that patent is invalid." (*Id.* at ¶ 12.) In its prayer for relief, Technical requested that the Court (1) declare the '181 patent not infringed by Technical's activities; (2) declare that Technical is not in breach of the License and Supply Agreement; and (3) award attorney's fees under 35 U.S.C. § 285. This court again dismissed Technical's complaint without prejudice. (R. 3-1.) On May 1, 2002, Zurn filed a patent infringement suit against Technical in the district court for the Western District of Pennsylvania. Technical now moves for reconsideration of this Court's April 26, 2002, dismissal.

## LEGAL STANDARDS

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996); *Blanchard v. Edgemark Fin. Corp.*, No. 94 C 1890, 2000 WL 1060827, *2 (N.D. Ill. Aug. 2, 2000). In this case, Technical argues that this Court committed a manifest error of law when it dismissed its complaint for lack of jurisdiction and venue.

## ANALYSIS

### I. Personal Jurisdiction

We turn first to the question of whether we may assert personal jurisdiction over the defendant. The party asserting the existence of jurisdiction bears the burden of proof, *Publications Int'l, Inc. v. Simon & Schuster, Inc.*, 763 F. Supp. 309, 310 (N.D. Ill. 1991), and any factual disputes are resolved in favor of the plaintiff, *Dresden v. Treasure Island, LLC*, No. 00 C 6153, 2001 WL 1002518, at *3 (N.D. Ill. Aug. 31, 2001). According to the complaint, Zurn is a Pennsylvania corporation with its place of business in Erie, Pennsylvania. A federal district court

3

in Illinois may assert jurisdiction over a party to the same extent that a state court possesses jurisdiction. Fed. R. Civ. P. 4(k)(1)(A). In Illinois, a court acquires jurisdiction over an non-resident defendant if the defendant was "doing business" in the state or if the defendant is subject to personal jurisdiction under the Illinois Long-Arm Statute. 735 ILCS 5/2-209(a)[2]; *Kohler Co. v. Kohler Int'l Ltd.*, 196 F. Supp. 2d 690, 693 (N.D. Ill. 2002); *Sentry Ins. Co. v. Bull HN Info. Sys., Inc.*, No. 97 C. 4211, 1999 WL 51801, at *1 (N.D. Ill. Jan. 29, 1999). Technical does not allege that Zurn was regularly "doing business" in Illinois, but does claim that Zurn "transacted business" relating to the '181 patent in Illinois for purposes of the Long Arm Statute. Technical also notes that Zurn would be subject to jurisdiction due to the negotiation and execution of the licensing Agreement.

A single act of a defendant may be sufficient to assert personal jurisdiction over a defendant so long as the act forms the basis of the plaintiff's claim. *Ameritech Mobile Communications, Inc. v. Cellular Communications Corp.*, 664 F. Supp. 1175, 1177-78 (N.D. Ill. 1987). Courts are split on the question of whether, in an action for declaratory judgment, sending letters warning of patent infringement into a forum satisfies the due process requirements for personal jurisdiction. *See Ryobi Tech., Inc. v. Broglen Hotel Corp.*, No. 01 C 5630, 2002 WL 731140, at *3 (N.D. Ill. Apr. 24, 2002) (noting that under Federal Circuit law, merely sending letters warning of patent infringement into a forum does not satisfy the due process requirements

---

[2] This section states in pertinent part: "[a]ny person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person . . . to the jurisdiction of the courts of this State as to any cause of action arising from the doing of . . . (1) [t]he transaction of any business within this State . . . (7) [t]he making or performance of any contract or promise substantially connected with this State." 735 ILCS 5/2-209(a).

4

for personal jurisdiction). *But cf. E.J. McGowan & Assoc. v. Biotechnologies Inc.*, 736 F. Supp. 808, 811 (N.D. Ill.1990) (holding that the sending of infringement letters has been considered sufficient to confer jurisdiction under the "transaction of any business" section of the long-arm statute). Nevertheless, contracts and licensing agreements between a resident plaintiff and non-resident defendant have been deemed sufficient to allow courts to exercise personal jurisdiction over the non-resident defendant. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995); *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 590-91 (7th Cir. 1984) (defendants' partial negotiation and execution of contract in Illinois and payment to Illinois plaintiff constitutes "transacting business" for purposes of Long Arm Statute).

We conclude that Zurn's contacts with this district, when viewed as a whole, are sufficient to establish personal jurisdiction under the Illinois Long-Arm Statute. *See C3 Tech., Inc. v. Richmond Mach. & Fabricating, Inc.*, No. 90 C 1600, 1990 WL 106539, *1 (N.D. Ill. July 11, 1990). Technical's complaint alleges that Zurn's contacts with Illinois included: (1) sending a letter threatening patent infringement to Technical in Illinois; (2) negotiating and executing a licensing agreement with Technical that was wholly or partially performed in Illinois; (3) sending a letter terminating the licensing agreement to Illinois; (4) engaging in telephone calls with Technical in Illinois related to the patent and licensing agreement; and (5) on information and belief, transacting other business in Illinois. Zurn has not come forward with any argument that Illinois cannot exercise long-arm jurisdiction over it or that personal jurisdiction is lacking. Similarly, we conclude that the cumulative effect of these contacts is sufficient to independently

satisfy constitutional due process requirements.³ *See Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (holding that defendant must maintain minimum contacts with forum state such that suit does not offend "traditional notions of fair play and substantial justice."); *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986).⁴ As a result of entering into a contract to license its patent to an Illinois company, Zurn purposefully availed itself of the privilege of conducting activities within the forum, and could reasonably anticipate being haled into court there for disputes surrounding the patent or the Agreement. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292-94 (1980); *FMC Corp. v. Varonos*, 892 F.2d 1308, 1313 (7th Cir. 1990). Therefore, this Court's exercise of personal jurisdiction over Zurn would not offend constitutional due process requirements.

## II. Subject Matter Jurisdiction

Technical alleges in its complaint that its claims "arise under" both federal law and the United States patent laws, thus conferring subject matter jurisdiction in the federal courts. *See* 28 U.S.C. §§ 1131, 1338. In response, Zurn contends that Technical's lawsuit arises solely under state contract law because Technical could not raise a federal patent infringement claim while a

---

³ Subsection (c) of the statute provides that a "court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States," thus making the Illinois Long-Arm Statute coextensive with constitutional minimum due process requirements. 735 ILCS 5/2-209(c).

⁴ *International Shoe* and its progeny decided cases where diversity jurisdiction or the review of state court judgments was at issue. In this case, however, federally created rights are at issue. The Seventh Circuit has held that there is no operative difference between the concept of due process as applied to the states through the Fourteenth Amendment and due process as applied through the Fifth Amendment for federal claims. *See Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1143 (7th Cir. 1975). Therefore the principles articulated in *International Shoe* are equally applicable here even though the analysis occurs through the lens of the Fifth Amendment.

valid licensing agreement was in place. Zurn relies primarily on a Third Circuit case for the proposition that no federal jurisdiction exists to address patent infringement and validity during the pendency of a licensing agreement. *See Thiokol Chem. Corp. v. Burlington Industries, Inc.*, 448 F.2d 1328 (3d Cir. 1971). Zurn, however, fails to note that there is a split among the circuits on this issue. *Compare Thiokol*, 526 F.2d 549 *and Product Eng'g & Mfg., Inc. v. Barnes*, 424 F.2d 42 (10th Cir. 1970) *with Precision Shooting Equip. Co. v. Allen*, 646 F.2d 313 (7th Cir. 1981), *Geni-Chlor Int'l, Inc. v. Multisonics Dev. Corp.*, 580 F.2d 981 (9th Cir. 1978); *Warner-Jenkinson Co. v. Allied Chem. Corp.*, 567 F.2d 184 (2d Cir. 1977); *Hanes Corp. v. Millard*, 531 F.2d 585 (D.C. Cir. 1976). Nor does Zurn mention that the Seventh Circuit and the Federal Circuit[5] have not prohibited federal patent infringement suits while a licensing agreement remains in effect. *See Precision Shooting*, 646 F.2d at 317 (stating that prior cases should not be interpreted as concluding that in this circuit a valid license always precludes jurisdiction to entertain a licensee's challenge to the validity of the patent); *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 880 (Fed. Cir. 1983) (holding that plaintiff "had a reasonable apprehension of an infringement suit even though the license agreement was still in effect" and thus there was federal "arising under" jurisdiction under § 1338(a) and an actual controversy). Therefore, we conclude that the fact that Technical did not rescind the licensing agreement before bringing suit does not bar its federal claims.

---

[5] These are the only two circuits that could control our inquiry. In cases involving the patent laws of the United States, the substantive law of the Federal Circuit controls, rather than the court of the circuit in which the case was filed. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995). But procedural issues that are not unique to patent law are governed by the decision of the circuit in which the case arises. *McCook Metals LLC v. Alcoa, Inc.*, 192 F.R.D. 242, 251 (N.D. Ill. 2000).

7

Similarly, federal "arising under" jurisdiction exists in the context of a declaratory judgment action where, as here, the plaintiff anticipates a coercive action by the patent holder. *See, e.g., Milwaukee Gas Specialty Co. v. Mercoid Corp.*, 104 F.2d 589, 592 (7th Cir. 1939) (a petition under § 2201 "seeking the judgment of the court whether the respondent's patent was valid, and, if so, whether it was infringed by petitioner is a suit under the patent laws" and thus district court had jurisdiction). *See also Bell & Beckwith v. United States*, 766 F.2d 910, 913 (6th Cir. 1985) (holding that federal question jurisdiction exists "[b]ecause the infringer's suit merely anticipates a coercive action by the patentee and the patentee's action would have arisen under the patent laws, the anticipatory action by the infringer likewise arises under federal law") (internal citations and quotations omitted). Accordingly, we hold that Technical's failure to rescind the Agreement before bringing suit does not defeat this Court's subject matter jurisdiction.

### III. The Propriety Of Technical's Suit Under The Declaratory Judgment Act

The Declaratory Judgment Act, 28 U.S.C. § 2201, enables litigants to seek a declaration of their rights and grants district courts an additional procedural tool on which to base relief. The Act, however, does not independently confer federal jurisdiction; therefore subject matter jurisdiction must be independently established. *See Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995). Section 2201 incorporates the general Article III requirement of an actual "case or controversy" between the parties. *See Nationwide*, 52 F.3d at 692, *Bard*, 716 F.2d at 879. In the context of declaratory actions relating to patents, there is a two-prong test to determine if an actual controversy exists: (1) the plaintiff is presently engaged in activity to produce the infringing product; and (2) the plaintiff is under a reasonable apprehension that the patentee will

8

enforce his rights by initiating an infringement suit. *BP Chem. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993). Only the actions of the defendant known to the plaintiff at the time the action is commenced can be considered in determining whether such a threat exists. *Norfolk S. R.R. Co. v. Guthrie*, 233 F.3d 532, 534-35 (7th Cir. 2000); *West Interactive Corp. v. First Data Res., Inc.*, 972 F.2d 1295, 1297 (Fed. Cir. 1992). But "[a]lthough it is the situation at the time suit was filed that establishes the existence *vel non* of an actual controversy, subsequent events can reinforce the correctness of the conclusion." *BP Chem Ltd.*, 4 F.3d at 980 (internal citations omitted). Whether an "actual controversy" exists is based on the totality of the circumstances. *Id.* at 977; *Field Container Co. v. Somerville Packaging Corp.*, 842 F. Supp. 338, 341 (N.D. Ill. 1994).

The only prong at issue here is whether Technical had a reasonable apprehension of suit. Technical argues that it did because: (1) Zurn had filed a prior infringement suit against Technical based on the '181 patent; (2) Zurn warned Technical of its breach of the licensing agreement and possible infringement of its patent during a telephone conversation; and (3) Zurn sent Technical a letter declaring that Technical was in breach of the agreement. Zurn, on the other hand, contends that Technical had no reasonable apprehension of suit because Technical knew that it was insulated from suit until at least May 13, 2002, (the date that the agreement formally terminated) because until that date, Technical was protected by the licensing agreement and could not be sued for infringement. Zurn also denies that it threatened litigation in the March 20, 2002, telephone call. As a result, Zurn maintains, Technical has not adequately alleged a case or controversy under the Act.

9

But courts determining whether a party had a reasonable apprehension of suit consider many factors, including: (1) letters threatening infringement suits sent to a competitor or his customers by the patentee, *Grafon Corp. v. Hausermann*, 607 F.2d 781 (7th Cir. 1979); (2) advertisement by patentee in a trade journal warning of infringement suits, *Federated Tel. & Radio Corp. v. Assoc. Tel. & Tel. Co.*, 169 F.2d 1012 (3d Cir. 1948); (3) a history of litigation by the patentee to enforce his rights, *Sweetheart Plastics, Inc. v. Ill. Tool Works, Inc.*, 439 F.2d 871, 874 (1st Cir. 1971); *Field*, 842 F. Supp. at 341; and (4) assertions made during license negotiations or arbitration, *Field*, 842 F. Supp. at 341.

In this case, Zurn sent Technical a letter warning of breach and possible patent infringement. Moreover, the parties had a history of litigation over the same patent dating back almost ten years. Although Zurn's President and Vice President for International Operations averred in affidavits that "[a]t no time during the March 20, 2002, telephone conversation did either [affiant] . . . threaten, or even mention, the possibility of a suit for infringement," (6-1, Def.'s Resp., Exs. E, F), this assertion does not automatically preclude a finding that Technical reasonably apprehended suit. As an initial matter, we resolve such factual disputes in favor of the plaintiff. *RAR*, 107 F.3d at 1275. Moreover, even if we accepted Zurn's version of the telephone conversation, the fact that Zurn did not mention or threaten an infringement suit is not dispositive. Zurn did not explicitly rule out future litigation during that conversation, and thus Technical could reasonably fear, based on Zurn's prior actions, that a lawsuit would follow closely on the heels of the Agreement's termination. *See Bard*, 716 F.2d at 881 (defendant submitted an affidavit stating that it had no intention of terminating the license agreement or suing for infringement; court held that this did not rule out plaintiff's reasonable apprehension of

10

suit). Indeed, that is precisely what occurred in this case, since Zurn filed its own patent infringement lawsuit only two weeks after formally notifying Technical that it was terminating the licensing agreement. *See BP Chem.*, 4 F.3d at 980 (noting that subsequent events can reinforce the correctness of the conclusion that an actual controversy existed). Thus, we hold that Technical could have had a reasonable apprehension of a suit by Zurn, and that an actual controversy existed for purposes of § 2201.

**IV.     The Court's Discretion Under § 2201 And Venue**

Even where a justiciable controversy has been shown, federal courts have discretion to decline to hear a suit under § 2201, especially if other pending litigation will dispose of the issue presented for declaratory relief. *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995). This Court's April 26, 2002, Order dismissing the complaint noted that it is not appropriate for a litigant to utilize § 2201 to engage in a "race to the courthouse." *See Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746 (7th Cir. 1987) (noting that Seventh Circuit does not rigidly adhere to the rule that the forum of the first party to file governs).

Technical argues that this was not a race to the courthouse because, unlike *Tempco* where the defendant filed suit within four days of plaintiff's § 2201 suit, Zurn did not file its own lawsuit until almost two months after its initial complaint. Moreover, Technical argues that it properly sought declaratory relief because Zurn was merely dangling a threat of litigation in order to stifle Technical's business and ability to compete. But Technical filed its initial complaint less that five days after the telephone conversation during which it claims that Zurn threatened infringement litigation, and less than two weeks after Zurn's first letter alleging breach of the

11

Agreement. This timing certainly supports a finding that Technical hoped to beat Zurn to the courthouse. Moreover, Zurn subsequently did file a patent infringement action of its own, thus obviating Technical's concerns that Zurn's threats of litigation were mere idle threats.

Although aspects of the manner and timing of Technical's filing give this Court serious pause and, in fact, led this Court to twice dismiss Technical's complaint, Zurn has not clearly established that Technical violated *Tempco*. Indeed, its only arguments in support of *Tempco* revolve around the fact that Technical filed suit before the expiration of the licensing Agreement, an argument not supported by this circuit's law, and the fact that it denies ever threatening Technical with a lawsuit, which as noted above is a factual dispute that we resolve in favor of Technical.

Additionally, although Technical fails to raise this argument, there is serious question whether *Tempco* applies in this case because the Federal Circuit has explicitly rejected the application of *Tempco* in patent cases, and Federal Circuit law controls this issue.[6] *See Genetech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) (holding that "the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise").[7] *See also FPC Corp. v. Uniplast, Inc.*, 964 F. Supp. 1212 (N.D. Ill. 1997); *Roadmaster Corp. v. Nordictrack, Inc.*, No. 93 C 1260, 1993

---

[6] See note 5, *supra*.

[7] A portion of *Genetech* was overruled by the Supreme Court in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). In *Wilton*, the Court upheld the district court's decision to stay a first-filed declaratory judgment action in favor of parallel state-court litigation. 515 U.S. at 282. In making this determination, the Supreme Court held that the de novo standard of review for declaratory judgment matters was not deferential enough, and overruled contrary precedent, including *Genentech*. However, *Wilton* did not overrule, or even discuss, *Genentech's* holding that the first-filed rule should be applied in patent cases.

12

WL 625537, at *3 (N. D. Ill. Sept. 20, 1993) (applying *Genetech* and not *Tempco* in case where after NordicTrack charged Roadmaster with infringing it's patent, Roadmaster filed a declaratory judgment action to resolve the controversy and NordicTrack subsequently filed an infringement action in a different state and moved to dismiss the declaratory judgment action). Accordingly, this Court will not exercise its discretion to dismiss under § 2201 at this time.

## CONCLUSION

Because it appears to the Court that there are sufficient contacts to establish jurisdiction, as well as a case and controversy sufficient to satisfy the requirements of § 2201, this Court will not, in its discretion, decline to hear the case. For the foregoing reasons, Technical's motion to reconsider is granted. (R. 4-1.) However, our review of the pleadings and issues in this case indicates that venue is more appropriate in the district court for the Western District of Pennsylvania, where Zurn's patent infringement case is presently pending. Thus, although jurisdiction in this district is proper, this Court has decided to exercise its discretion under 28 U.S.C. § 1404(a) and § 1406 and transfer this reinstated lawsuit to the Western District of Pennsylvania for potential consolidation with the pending litigation between the parties.

ENTERED:

Judge Ruben Castillo
United States District Court

**Dated: September 9, 2002**

13